## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **AINSWORTH TURNER and MORRIS REID,** | : | Civil Case No.: 1:16-cv-5912 |
| | : | |
| *Plaintiffs,* | : | **COLLECTIVE ACTION** |
| | : | **COMPLAINT** |
| **V.** | : | |
| **SIP N CHAT COCKTAIL LOUNGE, INC.,** | : | |
| **HERBIE MINGO, and** | : | **Jury Trial Demanded** |
| **SHERILL PURCELL, M.D.,** | : | |
| | : | |
| *Defendants.* | : | |

Plaintiffs Ainsworth Turner ("Turner") and Morris Reid ("Reid"), collectively referred to as "Plaintiffs", by their undersigned attorneys, for their Complaint against the defendants Sip N Chat Cocktail Lounge ("Sip N Chat"), Herbie Mingo ("Mingo") and Sherill Purcell, M.D. ("Purcell") (collectively "Defendants") allege as follows:

### PRELIMINARY STATEMENT

1.       This is an action for overtime pay, unpaid wages and other relief brought under the Fair Labor Standards Act, 28 U.S.C. § 201 et seq. ("FLSA") and Article 6 and Article 19 of the New York Labor Law ("NYLL"). This lawsuit seeks to recover unpaid overtime compensation, monies unlawfully deducted from wages, spread of hours payments, and penalties for failure to provide proper wage notices and wage payment stubs.

2.       Commencing in 2012 and continuing to April 2015, Turner was employed by Defendants as a Cook at Sip N Chat, a self-proclaimed, highly regarded cocktail lounge and

restaurant. In willful and conscious disregard of the law, Defendants failed to pay to Turner for the overtime work he performed. Further, Defendants failed to compensate Turner with proper "spread of hours" payments, made unlawful deductions from Turner's compensation, and failed to provide Turner with proper wage notices and wage statements as required by the NYLL. For these willful violations of the NYLL, Defendants are liable to Turner, jointly and severally, for back pay, liquidated damages, penalties and attorney's fees and costs.

3.      Commencing in 2010 and continuing to May 2015, Reid was employed by Defendants as a Maintenance Worker at Spin N Chat Cocktail Lounge, a self-proclaimed, highly regarded cocktail lounge and restaurant. In willful and conscious disregard of the law, Defendants failed to pay to Reid for the overtime work he performed. Further, Defendants failed to compensate Reid with proper "spread of hours" payments, made unlawful deductions from Reid's compensation, and failed to provide Reid with proper wage notices and wage statements as required by the NYLL. For these willful violations of the NYLL, Defendants are liable to Reid, jointly and severally, for back pay, liquidated damages, penalties and attorney's fees and costs.

### PARTIES

4.      Turner is an individual and is, and at all times relevant to this Complaint, has been a resident of the State of New York, the City of New York, County of Bronx.

5.      Reid is an individual and is, and at all times relevant to this Complaint, has been a resident of the State of New York, the City of New York, County of Kings.

6.      Sip N Chat is a New York domestic corporation, formed in 2002.

7.      Mingo is an individual and a resident of the State of New York, the City of New York, County of Kings.

8.      Mingo is identified with the New York State Department of State, Division of Corporations, as the Chief Executive Officer of Sip N Chat.

9.      Purcell is an individual and a resident of the State of New York, the City of New York, County of Kings.

10.     Purcell is identified with the New York State Department of State, Division of Corporations, as the Principal Executive Officer of Sip N Chat.

11.     Sip N Chat does business and is located at 2910 Avenue D, Brooklyn, New York 11226.

12.     At all relevant times, Mingo was the owner/operator/manager of Sip N Chat.

13.     At all relevant times, Mingo had the discretionary authority to create and enforce personnel decisions on behalf of Sip N Chat, including but not limited to: hiring and terminating employees, setting wages, authorizing issuance of wages, maintaining employee records, and otherwise controlling the terms and conditions of employment for Turner, Reid and all other employees of Sip N Chat.

14.     At all relevant times, Purcell was the owner/operator/manager of Sip N Chat.

15.     At all relevant times, Purcell had the discretionary authority to create and enforce personnel decisions on behalf of Sip N Chat, including but not limited to: hiring and terminating employees, setting wages, authorizing issuance of wages, maintaining employee records, and otherwise controlling the terms and conditions of employment for Turner, Reid and all other employees of Sip N Chat.

16.     At all relevant times, Purcell and Mingo were married.

17.     At all relevant times, Sip N Chat, Purcell and Mingo own the property where Sip N Chat is located.

## JURISDICTION AND VENUE

### Federal Question Jurisdiction and Supplemental Jurisdiction

18.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the civil action herein arises under the laws of the United States, namely the FLSA.

19.     Sip N Chat is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA.

20.     Plaintiffs, and all others employed by Defendants, are "employees" within the meaning of the FLSA.

21.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 29 U.S.C. § 1367.

### Personal Jurisdiction

22.     This Court has personal jurisdiction over Defendants because Defendants engage in business and/or reside in the State of New York and within the Eastern District of New York.

### Venue

23.     Venue is proper in the Eastern District of New York under 29 U.S.C. §1391(b)(1) and (2) because Defendants conduct business and reside in this judicial district and because the acts and omissions giving rise to the claims set forth herein occurred in this judicial district.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24.     Plaintiffs bring this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons presently or formerly employed by Defendants in non-exempt positions subject to Defendants' unlawful overtime pay practices and policies described herein and who worked for Defendants at any time in the three (3) year period preceding the date the instant action was initiated.

## FACTS

### Sip N Chat's Business

25.     In 2001, Mingo and Purcell open Sip N Chat.

26.     From the time of its opening to the present, Sip N Chat's hours of operations are as follows: Monday through Thursday and Sundays 5 p.m. to 2 a.m. and Friday & Saturday 5 p.m. to 4 a.m.

27.     From the time of its opening to the present, Sip N Chat is a two-level establishment. The main level is the dinning level while the downstairs is the "night club/ lounge" level. Since inception, Sip N Chat has presented to its clientele typical "bar food", caribbean and creole dishes.

28.     Patrons of Sip N Chat may also purchase beer, wine and alcoholic beverages.

### TURNER'S FACTS

### Turner's Hire by Mingo

29.     On or about January 28, 2012, Mingo hired Turner for the position of Cook at Sip N Chat.

30.    Mingo established Turner's work schedule at the time of his hire, and thereafter adjusted his work schedule on as needed basis through the entirety of the period of Turner's employment by Sip N Chat.

31.    Mingo established the work schedule of all other employees of Sip N Chat.

32.    Mingo determined the rate and method by which Turner was compensated.

33.    Mingo determined the rate and method by which all other employees of Sip N Chat were compensated.

34.    Mingo maintained all employment records related to Turner.

35.    Mingo maintained all employment records related to all other employees of Sip N Chat.

36.    Mingo was a majority shareholder of Sip N Chat.

**Turner's Hire by Purcell**

37.    On or about January 28, 2012, Purcell hired Turner for the position of Cook at Sip N Chat.

38.    Purcell established Turner's work schedule at the time of his hire, and thereafter adjusted his work schedule on an as needed basis through the entirety of the period of Turner's employment by Sip N Chat.

39.    Purcell established the work schedule of all other employees of Sip N Chat.

40.    Purcell determined the rate and method by which Turner was compensated.

41.    Purcell determined the rate and method by which all other employees of Sip N Chat were compensated.

42.    Purcell maintained all employment records related to Turner.

43.     Purcell maintained all employment records related to all other employees of Sip N Chat.

44.     Purcell was a majority shareholder of Sip N. Chat.

### Turner's Schedule

45.      At various times during his employment with Sip N Chat, Defendants suffered or permitted Turner to work more than forty (40) hours during a workweek.

46.     Turner's usual work schedule has been, from the commencement of his employment, and is as follows: each Sunday Turner works from 5:00 pm to 2:00 am, Tuesday from 4:00pm to 2:00 am, Thursday 5:00pm to 3:00 am, Friday 8:00pm to 4:00am and Saturday 4:00pm to 2:00am.

47.     Thus, during those workweeks in which he worked his usual schedule, Turner has worked a minimum of nine (9) hours on each Sunday, ten (10) hours on each Tuesday, Thursday and Saturday and eight (8) hours or more on each Friday.

48.     Thus, during those workweeks in which he worked his usual schedule, Turner has worked a minimum of Forty-Six (46) hours.

49.     During each workweek during which he worked his usual schedule, Turner worked in excess of 46 hours every week, but Defendants did not compensate him with the overtime pay to which he is entitled under the FLSA and the NYLL.

50.     During Tuesday, Thursday and Saturday when he worked his usual schedule, Turner's workday began as early as 4:00 pm and ended more than ten hours later, but Defendants did not provide him with the "spread of hours" payment for each such day to which he is entitled under the NYLL.

51.     Notwithstanding the requirement of the New York Wage Theft Prevention Law that employees be provided with a statement of their wage arrangement, Defendants failed to provide Turner with such statements at such times that provision of such statements has been required by the NYLL.

**Turner's Terms of Compensation**

52.     At the time of Turner's hire, Mingo informed Turner that his compensation would consist of two components: (i) an hourly wage of $12.50 per hour and (ii) overtime.

53.     At the time of Turner's hire, Purcell informed Turner that his compensation would consist of two components: (i) an hourly wage of $12.50 per hour and (ii) overtime.

54.     Upon information and belief, all Cooks employed at Sip N Chat were compensated in the same manner as Turner, as described in paragraphs 50, 52, 53, 54, 58-61 of this Complaint.

55.     Notwithstanding the requirement of New York law that employees receive payment of wages no more than seven (7) calendar days after the end of the pay period, Sip N Chat paid its employees nine (9) or more days after the end of the payroll period.

56.     Notwithstanding the requirement of the New York Wage Theft Prevention Law that employees be provided with a statement of their wage arrangement, Defendants failed to provide Turner with such statements at such times that provision of such statements has been required by the NYLL.

**The Manner by Which Defendants Calculated Turner's Gross and Net Wages**

57.     From in or about 2013 through the remainder of his employment with Sip N Chat, Turner's pay was provided to him approximately nine days after the conclusion of the payroll period.

58.     On the date in which each payroll check was given to Turner, Mingo provided Turner with a check and pay stub which purported to represent the gross pay for that payroll period and net pay for that payroll period.

59.     On the date in which each payroll check was given to Turner, Purcell provided Turner with a check and pay stub which purported to represent the gross pay for that payroll period and net pay for that payroll period.

60.     Each pay stub provided to Turner supposedly reflected an amount attributable to "salary" for that pay period.

61.     The pay stub provided to Turner did not reflect the number of hours worked by Turner during the payroll period.

62.     The supposed "salary" rate made to Turner during each pay period was not consistent from one pay period to another.

63.     Defendants did not provide Turner with overtime compensation for those workweeks in which Turner worked more than 40 hours.

64.     Turner was classified as a non-exempt employee.

65.     Pursuant to the FLSA and the NYLL, Defendants were and are required to make, keep and preserve records of employee wages, hours and employment conditions.

66.     Defendants failed to maintain such records of employee wages, hours and employment conditions, with respect to Turner or with respect to any other employees.

### The Cessation of Turner's Employment

67.     Turner ceased working for Defendants effective November 28, 2015.

### REID'S FACTS

### Reid's Hire by Mingo

68.     On or about early 2010, Mingo hired Reid for the position of Maintenance Worker at Sip N Chat.

69.     Mingo established Reid's work schedule at the time of his hire, and thereafter adjusted his work schedule on an as needed basis through the entirety of the period of Reid's employment by Sip N Chat.

70.     Mingo established the work schedule of all other employees of Sip N Chat.

71.     Mingo determined the rate and method by which Reid was compensated.

72.     Mingo determined the rate and method by which all other employees of Sip N Chat were compensated.

73.     Mingo maintained all employment records related to Reid.

74.     Mingo maintained all employment records related to all other employees of Sip N Chat.

### Reid's Hire by Purcell

75.     On or about early 2010, Purcell hired Reid for the position of Maintenance Worker at Sip N Chat.

76.     Purcell established Reid's work schedule at the time of his hire, and thereafter adjusted his work schedule on an as needed basis through the entirety of the period of Reid's employment by Sip N Chat.

77.     Purcell  established the work schedule of all other employees of Sip N Chat.

78.     Purcell determined the rate and method by which Reid was compensated.

79.     Purcell determined the rate and method by which all other employees of Sip N Chat were compensated.

80.     Purcell maintained all employment records related to Reid.

81.     Purcell maintained all employment records related to all other employees of Sip N Chat.

82.     At various times during his employment with Sip N Chat, Defendants suffered or permitted Reid to work more than forty (40) hours during a workweek.

83.     Reid's usual work schedule has been, from the commencement of his employment up and until on or about December 29, 2013, and is as follows: each Monday, Thursday, Friday and Saturday Reid worked from 8:00 am to 4:00pm.

84.     On some weeks Reid's usual work schedule has been, from the commencement of his employment up and until on or about December 29, 2013 and is as follows: each Monday, Tuesday, Thursday, Friday and Saturday Reid works from 8:00 am to 4:00pm.

85.     Reid's usual work schedule has been, from on or about December 29, 2013 until the cessation of his employment, and is as follows: seven (7) days a week from 8:00 am to 4:00pm.

86.     Thus, during those workweeks in which he worked his usual schedule, Reid has worked a minimum of eight (8) hours per day.

87.     Thus during those workweeks in which he worked his usual schedule of Monday, Tuesday, Thursday, Friday and Saturday Reid has worked a minimum of Forty (40) hours per week.

88.     Thus during those workweeks in which he worked his usual schedule after on or about December 29, 2013 of seven (7) days a week Reid has worked a minimum of Fifty Six (56) hours per week.

89.     During each workweek during which he worked his usual schedule after on or about December 29, 2013, Reid worked in excess of 56 hours every week, but Defendants did not compensate him with the overtime pay to which he is entitled under the FLSA and the NYLL.

90.     Notwithstanding the requirement of the New York Wage Theft Prevention Law that employees be provided with a statement of their wage arrangement, Defendants failed to provide Reid with such statements at such times that provision of such statements has been required by the NYLL.

**Reid's Terms of Compensation**

91.     At the time of Reid's hire, Mingo informed Reid that his compensation, prior to on or about December 29, 2013, would consist of a flat rate of $300.00 per week for those weeks in which he worked forty (40) hours.

92.     At the time of Reid's hire, Purcell informed Reid that his compensation, prior to on or about December 29, 2013, would consist of a flat rate of $300.00 per week for those weeks in which he worked forty (40) hours.

12

93.     From on or about December 29, 2013, Mingo informed Reid that his compensation, would consist of a flat rate of $450.00 per week for those weeks in which he worked fifty-six (56) hours.

94.     From on or about December 29, 2013, Purcell informed Reid that his compensation, would consist of a flat rate of $450.00 per week for those weeks in which he worked fifty-six (56) hours.

95.     Upon information and belief, all Maintenance Workers employed at Sip N Chat were compensated in the same manner as Reid, as described in paragraphs 92 through 94 and 96 of this Complaint.

96.     Notwithstanding the requirement of New York law that employees receive payment of wages no more than seven (7) calendar days after the end of the pay period, Sip N Chat paid its employees nine (9) or more days after the end of the payroll period.

97.     Notwithstanding the requirement of the New York Wage Theft Prevention Law that employees be provided with a statement of their wage arrangement, Defendants failed to provide Reid with such statements at such times that provision of such statements has been required by the NYLL.

98.     Upon information and belief no employees of Sip N Chat were paid overtime.

**<u>The Manner by Which Defendants Calculated Reid's Gross and Net Wages</u>**

99.     From in or about December 29, 2013 through the remainder of his employment with Sip N Chat, Reid's pay was provided to him which approximately nine days after the conclusion of the payroll period.

100.     On the date in which each payroll check was provided to Reid, Mingo provided Reid with a check and pay stub which purported to represent the gross pay for that payroll period and net pay for that payroll period.

101.     On the date in which each payroll check was provided to Reid, Purcell provided Reid with a check and pay stub which purported to represent the gross pay for that payroll period and net pay for that payroll period.

102.     Each pay stub provided to Reid supposedly reflected the an amount attributable to "salary" for that pay period.

103.     The pay stub provided to Reid did not reflect the number of hours purportedly worked by Reid during the payroll period.

104.     Defendants did not provide Reid with overtime compensation for those workweeks in which Turner worked more than 40 hours.

105.     Pursuant to the FLSA and the NYLL, Defendants were and are required to make, keep and preserve records of employee wages, hours and employment conditions.

106.     Reid was classified as a non-exempt employee.

107.     Defendants failed to maintain such records of employee wages, hours and employment conditions, with respect to Turner or with respect to any other employees.

**The Cessation of Reid's Employment**

108.     Turner ceased working for Defendants effective May 9, 2015.

**FIRST CAUSE OF ACTION (On Behalf of Plaintiffs and FLSA Collective, Against All Defendants - Failure to Pay Overtime Compensation - FLSA)**

109.     Plaintiffs and the FLSA Collective reallege and reassert each and every allegation set forth in paragraphs 1 through 84 of this Complaint as if fully set forth herein.

14

110.    The overtime compensation provisions set forth in the FLSA and the regulations thereunder promulgated by the United States Department of Labor apply to Defendants and protect Plaintiffs and the FLSA Collective.

111.    Defendants have failed to pay Plaintiffs and the FLSA Collective overtime compensation for all time in excess of forty (40) hours worked in any workweek.

112.    Defendants' violation of the overtime provisions of the FLSA were willful and intentional, entitling Plaintiffs and the FLSA Collective to unpaid overtime compensation for a period of three years from the date of commencement of this action.

113.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorney's fees, costs, and other relief pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION (On Behalf of Plaintiffs, Against All Defendants - Failure to Pay Overtime Compensation - NYLL)

114.    Plaintiffs reallege and reassert each and every allegation set forth in paragraphs 1 through 89 of this complaint as if fully set forth herein.

115.    Pursuant to Article 19 of the NYLL and the regulations of the New York State Department of Labor, Hospitality Wage Order (the "Hospitality Wage Order"), at 12 NYCRR § 146-1.4, Defendants are required to pay overtime compensation to each of its employees for all hours worked over forty (40) in any workweek.

116.    Plaintiffs willfully failed to pay to any of the Plaintiffs overtime compensation for overtimes they worked, as required by Article 19 of the NYLL and 12 NYCRR § 146-1.4.

117.    Claims for violation of Article 19 of the NYLL are governed by a six (6) year statute of limitations.

118.    As a result of Defendants' willful violations of the NYLL and the Hospitality Wage Order, Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorney's fees, costs, and other relief pursuant to the NYLL.

**THIRD CAUSE OF ACTION (On Behalf of Turner, Against All Defendants -- NYLL – Spread of Hours Pay)**

119.    Plaintiffs reassert and reallege each and every allegation set forth in paragraphs 1 Through 94 of this Complaint as if fully set forth herein.

120.    On the majority of days during the period of his employment by Defendants, Turner worked with the consequence that the conclusion of his workday was more than ten (10) hours after the commencement of his shift.

121.    On those days on which Turner worked more than ten (10) hours, Turner is entitled to a "spread of hours" payment equal to one (1) hour's pay at the basic minimum wage, in accordance with the NYLL and the Hospitality Wage Order, 12 NYCRR § 146-1.6(a).

122.    Defendants have willfully failed to pay to Turner the "spread of hours" pay as required by the NYLL and the New York State Department of Labor Hospitality Wage Order, 12 NYCRR § 146-1.6.

123.    Claims for violation of the NYLL are subject to a six (6) year statute of limitation.

124.    Due to Defendants' violations of the NYLL and the Hospitality Wage Order, Turner is entitled to recover their unpaid "spread of hour" wages, liquidated damages as

provided for as provided by the NYLL, reasonable attorney's fees and costs, and prejudgment and post-judgment interest.

**FOURTH CAUSE OF ACTION (On Behalf of all Turner, against All Defendants -- NYLL § 195 - Recordkeeping Violations)**

125.    Plaintiffs reassert and reallege each and every allegation set forth in paragraphs 1 through 124 of this Complaint as if fully set forth herein.

126.    Defendants are, singly or collectively, employers under the NYLL subject to the provisions of NYLL Section 195 (the "Wage Theft Prevention Law") and the provisions of the Hospitality Wage Order, 12 NYCRR § 146-2.2, pursuant to which, commencing in 2010 Defendants were required to provide Turner each year, in the form promulgated by the New York State Department of Labor, with a notice of his regular rate of pay, overtime rate, designated pay day, the name and address of the employer including the employer's "doing business as" name, and other information.

127.    The annual notice requirement of the Wage Theft Prevention Act was repealed effective February 25, 2015.

128.    In January 2013, Defendants failed to provide Turner with the required annual wage notice, in accordance with the Wage Theft Prevention Law and the Hospitality Wage Order.

129.    In January 2014, Defendants failed to provide Turner with the required annual wage notice, in accordance with the Wage Theft Prevention Law and the Hospitality Wage Order.

130.    In January 2015, Defendants failed to provide Turner with the required annual wage notice, in accordance with the Wage Theft Prevention Law and the Hospitality Wage Order.

131.    In addition, Defendants failed to provide Turner with the wage notice required to be provided in accordance with the Wage Theft Prevention Law and the Hospitality Wage Order.

132.    Due to Defendants' failure to provide to Turner the required wage notice in January 2013, Turner is entitled to recover from Defendants fifty dollars ($50.00) for each work week that the violation occurred or continued to occur, up to a total of twenty-five hundred dollars ($2,500.00), as provided by NYLL § 198(1)-d, along with reasonable attorney's fees and costs and injunctive/declaratory relief.

133.    Due to Defendants' failure to provide to Turner the required wage notice in January 2014, Turner is entitled to recover from Defendants fifty dollars ($50.00) for each work week that the violation occurred or continued to occur, up to a total of twenty-five hundred dollars ($2,500.00), as provided by NYLL § 198(1)-d, along with reasonable attorney's fees and costs and injunctive/declaratory relief.

134.    Due to Defendants' failure to provide to Turner the required wage notice in January 2015, Turner is entitled to recover from Defendants fifty dollars ($50.00) for each work week that the violation occurred or continued to occur, up to a total of twenty-five hundred dollars ($2,500.00), as provided by NYLL § 198(1)-d, along with reasonable attorney's fees and costs and injunctive/declaratory relief.

**FIFTH CAUSE OF ACTION (On Behalf of Reid, against All Defendants -- NYLL § 195 - Recordkeeping Violations)**

135.     Plaintiffs reassert and reallege each and every allegation set forth in paragraphs 1 through 134 of this Complaint as if fully set forth herein.

136.     Defendants are, singly or collectively, employers under the NYLL subject to the provisions of the Wage Theft Prevention Law and the Hospitality Wage Order, 12 NYCRR § 146-2.2, pursuant to which, commencing in January 2012, Defendants were required to provide Reid each year, in the form promulgated by the New York State Department of Labor, with a notice of his regular rate of pay, overtime rate, designated pay day, the name and address of the employer including the employer's "doing business as" name, and other information.

137.     Further, in accordance with the Wage Theft Prevention Law and the Hospitality Wage Order, 12 NYCRR § 146-2.2, Defendants were required to provide Reid with a written notice, in the form promulgated by the New York State Department of Labor, at the time Reid's compensation was changed.

138.     The annual notice requirement of the Wage Theft Protection Law was repealed effective February 25, 2015.

139.     In January 2012, Defendants failed to provide Reid with the required annual wage notice, in accordance with the Wage Theft Prevention Law and the Hospitality Wage Order, 12 NYCRR § 146-2.2.

140.     In January 2013, Defendants failed to provide Reid with the required annual wage notice, in accordance with the Wage Theft Prevention Law and the Hospitality Wage Order, 12 NYCRR § 146-2.2.

141.    In or about December 2013, Defendants increased Reid's work hours, without simultaneously increasing his wages by an amount sufficient to enable Reid to receive a comparable level of compensation, thereby effecting a reduction in the compensation of Reid.

142.    In January 2014, Defendants failed to provide Reid with the required wage notice, in accordance with the Wage Theft Prevention Law and the Hospitality Wage Order, 12 NYCRR § 146-2.2.

143.    Prior to the reduction of Reid's compensation as described in paragraph 117 of this Complaint, Defendants failed to provide Reid with the wage notice required to be provided in accordance with the Wage Theft Prevention Law and the Hospitality Wage Order, 12 NYCRR § 146-2.2.

144.    Due to Defendants' failure to provide to Reid the required wage notice in January 2014, Cortes is entitled to recover from Defendants fifty dollars ($50.00) for each work week that the violation occurred or continued to occur, up to a total of twenty-five hundred dollars ($2,500.00), as provided by NYLL § 198(1)-d, along with reasonable attorney's fees and costs and injunctive/declaratory relief.

145.    Due to Defendants' failure to provide to Cortes the required wage notice in January 2012, Reid is entitled to recover from Defendants fifty dollars ($50.00) for each work week that the violation occurred or continued to occur, up to a total of twenty-five hundred dollars ($2,500.00), as provided by NYLL § 198(1)-d, along with reasonable attorney's fees and costs and injunctive/declaratory relief.

146.    Due to Defendants' failure to provide to Cortes the required wage notice in January 2013, Reid is entitled to recover from Defendants fifty dollars ($50.00) for each work

week that the violation occurred or continued to occur, up to a total of twenty-five hundred dollars ($2,500.00), as provided by NYLL § 198(1)-d, along with reasonable attorney's fees and costs and injunctive/declaratory relief.

147.    Due to Defendants' failure to provide to Cortes the required wage notice in January 2014, Reid is entitled to recover from Defendants fifty dollars ($50.00) for each work week that the violation occurred or continued to occur, up to a total of twenty-five hundred dollars ($2,500.00), as provided by NYLL § 198(1)-d, along with reasonable attorney's fees and costs and injunctive/declaratory relief.

148.    Due to Defendants' failure to provide to Cortes the required wage notice in January 2015, Reid is entitled to recover from Defendants fifty dollars ($50.00) for each work week that the violation occurred or continued to occur, up to a total of twenty-five hundred dollars ($2,500.00), as provided by NYLL § 198(1)-d, along with reasonable attorney's fees and costs and injunctive/declaratory relief.

149.    Due to Defendants' failure to provide to Reid the required wage notice in or about January 2014 when Defendants caused Reid's compensation to be decreased as described in paragraph 117 of this Complaint, Reid is entitled to recover from Defendants fifty dollars ($50.00) for each work week that the violation occurred or continued to occur, up to a total of twenty-five hundred dollars ($2,500.00), as provided by NYLL § 198(1)-d, along with reasonable attorney's fees and costs and injunctive/declaratory relief.

**SIXTH CAUSE OF ACTION (On Behalf of Turner, Against All Defendants --NYLL § 195 - Recordkeeping Violations)**

150.    Defendants reassert and reallege each and every allegation set forth in paragraphs 1 through 149 of this Complaint as fully set forth herein.

151.    Pursuant to the NYLL and the Hospitality Wage Order, 12 NYCRR § 146-2.3, Defendants were and are required to provide each employee with a statement, commonly referred to as a pay stub, setting forth hours worked, wages paid, gross wages, credits claimed, deductions, and net pay.

152.    During Turner's employment, Defendants did not provide Turner with wage statements that accurately set forth the number of hours worked by Turner during the payroll period, the hourly rate of pay for the "Regular Wages" paid to him, and an accurate and proper payment of such "Regular Wages."

153.    Due to Defendants' failure to provide to Turner accurate wage statements, Turner is entitled to recover from Defendants one hundred dollars ($100.00) for each inaccurate wage statement up to a total of twenty-five hundred dollars ($2,500.00), along with attorney's fees and costs and injunctive/declaratory relief.

**SEVENTH CAUSE OF ACTION (On Behalf of Reid, Against All Defendants --NYLL § 195 - Recordkeeping Violations)**

154.    Plaintiffs reassert and reallege each and every allegation set forth in paragraphs 1 through 153 of this Complaint as if set forth herein.

155.    Pursuant to the NYLL and the Hospitality Wage Order, 12 NYCRR § 146-2.3, Defendants were and are required to provide each employee with a statement, commonly referred to as a pay stub, setting forth hours worked, wages paid, gross wages, credits claimed, deductions, and net pay.

156.    During Reid's employment and continuing to date, Defendants have not provided Reid with a wage statement that accurately set forth the number of hours worked by Reid during

the payroll period, the hourly rate of pay for the "Regular Wages" paid to him, and an accurate and proper payment of such "Regular Wages."

157.    During Reid's employment and continuing to date, Defendants have not provided Reid with wage statements that accurately set forth his gross wages earned during that pay period.

158.    Due to Defendants' failure to provide to Reid accurate wage statements, Reid is entitled to recover from Defendants one hundred dollars ($100.00) for each inaccurate wage statement up to a total of twenty-five hundred dollars ($2,500.00), along with attorney's fees and costs and injunctive/declaratory relief.

159.    As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiff, and those similarly situated employees, have been damaged in the loss of minimum wages for one or more weeks of work with Defendants.

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated persons, seek the following relief:

A.  that, at the earliest possible time, Plaintiffs are allowed to give notice of this collective action, or that the Court issue such notice, to all employees who are presently, or have during the three years immediately preceding the filing of this lawsuit, up to and including the date of the Court's issuance of court supervised notice, been employed by Defendants as non-exempt employees, such notice to inform them that this lawsuit has been filed, of the nature of the action, and of their right to join this action if they believe they were denied wages in violation of the FLSA or the NYLL;

B.  that the Court award to Plaintiffs and to members of the FLSA Collective all overtime compensation to which they are entitled under the FLSA, along with liquidated damages, attorney's fees and costs, and pre-judgment and post-judgment interest;

C.  That the Court award to Plaintiffs overtime compensation to which they are entitled under the NYLL, along with liquidated damages, attorney's fees and costs, and prejudgment and post-judgment interest;

D.  that the Court award to all Plaintiffs all "spread of hours" payments to which they are entitled pursuant to the NYLL, along with liquidated damages, attorney's fees and costs, and pre-judgment and post-judgment interest;

E.  that the Court award to all Plaintiffs statutory penalties for failure to provide wage notices in accordance with the Wage Theft Prevention Law, along with attorney's fees and costs;

F.  that the Court award to all Plaintiffs statutory penalties for failure to provide accurate wage statements in accordance with the Wage Theft Prevention Law, along with attorney's fees and costs;

G.  that the Court provide injunctive and declaratory relief to restrain and prevent Defendants from engaging in further violations of the FLSA and/or the NYLL; and

H.  that the Court provide such other and further relief as the Court deems necessary or appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court enter a judgment in their favor as requested above.

<u>**REQUEST FOR JURY TRIAL**</u>

Plaintiffs respectfully demand a trial by jury in this action.

Dated: New York, New York
        October 24, 2016

Respectfully submitted.

Matthew J. Salimbene, P.C.
*Attorneys for the Plaintiff(s)*

_____/s/_____
Matthew J. Salimbene, Esq.
900 Third Avenue, Suite 1801
New York, New York 10022
P: (212) 935-2060
F: (646) 783-3688